1
2
3
4
5
6
7
8
9
10
11
12

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| ANGELA EVANS, an individual; | Case No. 2:20-cv-000986-ART-VCF |
|---|---|
| Plaintiff, | ORDER |
| v. | |
| VALLEY ELECTRIC ASSOCIATION, INC.; DOES I through X and ROE CORPORATIONS XI through XX, inclusive; | |
| Defendants. | |

## I.  SUMMARY

Plaintiff Angela Evans ("Evans") brings this action alleging that Defendant Valley Electric Association ("VEA") unlawfully terminated her and discriminated against her on the basis of race, sex, national origin, and age, among other claims. Before the Court is Defendant VEA's Motion for Summary Judgment (ECF No. 80) and Evans' Motion for an Order Directing Additional Discovery (ECF No. 87). For the reasons set forth in this order, the Court grants in part and denies in part VEA's Motion for Summary Judgment and denies Evans' Motion for an Order Directing Additional Discovery.

## II. BACKGROUND

Except as noted, the following facts are undisputed. Angela Evans is a fifty-nine-year-old, Hispanic woman with thirty years of experience working with public utilities. (Compl. ¶¶27, 28; ECF No. 1-1). VEA is a member-owned electric utility cooperative established in 1965 and headquartered in Pahrump, Nevada. (Mot. Summ. J. at 1:18-19, ECF No. 80 ("MSJ")); Compl. ¶18). VEA is governed by an elected board of directors and serves 45,000 ratepayers across Southwest Nevada. (Hall Aff. ¶3, ECF No. 80-1; Compl. ¶19).

1

**A. Evans Was Hired at VEA and Promoted to CEO**

Evans was initially hired at VEA as an Executive Vice President and was promoted to permanent Chief Executive Officer ("CEO") approximately twenty months later. (MSJ at 2:7-3:12). On January 10, 2017, VEA offered Evans a position as "Executive Vice President of Operations" after Evans responded to an online job posting created by VEA. (Compl. ¶¶29, 30; Evans Offer Letter, 1, ECF No. 80-6). In February 2017 Evans accepted VEA's offer and began work at VEA later that month. (Compl. ¶ 30). Evans' starting salary was $180,000 per year, which was $50,000 less than other Executive Vice Presidents at VEA—two white women and a non-white man—who were paid a higher salary of $230,000 per year. (Evans Dep. Tr. at 37:23-25, ECF No. 80-4; MSJ at 13:16-19). On or about April 14, 2018, VEA's previous CEO, Tom Husted ("Husted"), selected Evans and another employee—Ken Johnson ("Johnson")—to temporarily rotate through two COO positions and increased Evans' salary to $230,000 per year. (Evans Dep. at 78:1-22, ECF No. 80-4).

Shortly after Evans was rotated into the COO position, VEA fired Husted after a female employee accused him of sexual misconduct. Evans, who was the only candidate considered for the interim CEO position, was promoted to interim CEO on May 4, 2018. After VEA's preferred candidate for permanent CEO, Byron Nolde, withdrew from consideration, Evans was promoted to permanent CEO on or about October 1, 2018. (Compl. ¶¶32-33; MSJ at 2:19-24, 3:5-13). As CEO, Evans oversaw a significant rate increase and workforce reductions intended to improve VEA's financial health. (MSJ at 3:15-19). Workforce reductions included a voluntary separation program in December 2018 and involuntary layoffs in late January or early February 2019. (Evans Dep. at 105:22-24, 112:7-23, ECF No. 80-4). The 2019 rate increase was the first imposed on VEA's members in more than ten years and "enraged" VEA's members. (MSJ at 3:20-23).

Also in January or early February 2019, Evans supervised the termination of

Johnson, who was accused of sexual harassment by thirteen female VEA employees. (Evans Dep. Tr. p. 128:13-23, ECF No. 80-7).

**B. Evans Was Arrested and Put on Administrative Leave**

After he was fired, Johnson became an active critic of VEA and Evans, and spearheaded a campaign to have Evans arrested and removed as CEO. Johnson founded "VEA Members for Change" ("MFC"), a group committed to recalling VEA's Board of Directors, including CEO Evans, around February 15, 2019. (MSJ at 3:24-4:5; Facebook Poll at 2, ECF No. 80-30 (showing a MFC page creation date of February 15, 2019); Johnson Dep. Tr. 18:4-25, ECF No. 80-13). Johnson tipped off another member of MFC, Nye County Sheriff's Office ("NCSO") Lieutenant Boruchowitz, about alleged criminal acts by Evans. Boruchowitz helped Johnson establish MFC and later became a spokesperson for the group. (MSJ at 4:14-23).

Based on Johnson's tips and with Boruchowitz's help, the NCSO investigated and ultimately arrested Evans in February 2019. Prior to Evans' arrest, the NSCO twice obtained and executed search warrants orchestrated by Boruchowitz. (MSJ at 4 fn.3). The first search warrant, executed on February 22, 2019, was based on allegations that VEA paid "hush money" to keep secret the allegations against former CEO Husted. (MSJ at 4:24-5:4). On February 25, 2019, Johnson again contacted the NCSO, this time claiming that Evans had work performed on VEA infrastructure behind a home she was planning to purchase at no cost to Evans. (MSJ at 5:5-7; Perra Email at 1, ECF No. 80-18). The next day, on February 26, 2019, NSCO obtained and executed a second search warrant at VEA and arrested Evans on suspicion of embezzling from VEA. (MSJ at 5:9-11).

After Evans' arrest, VEA placed Evans on paid administrative leave on February 26, 2019 and ordered an investigation into Evans' arrest and related matters. (Compl. ¶ 39; MSJ at 6:20-7:2). VEA hired Dick Peck, a white male, to serve as its interim CEO while Evans was on administrative leave. (MSJ at 6:9-

10).

From March until late May, Evans did not know if she would be allowed to return to VEA, even after it cleared her of criminal wrongdoing. A VEA Board Member, Ken Derschan, allegedly told Evans in late March that she could return to work on or about April 27, 2019, under the supervision of Peck, the interim CEO. (Compl. ¶¶ 41, 43; Evans Decl. ¶2, ECF No. 86-1; Evans Dep. Tr. at 94:21-24, ECF No. 86-5).

VEA's internal investigation of Evans cleared her of criminal wrongdoing but reprimanded her for violating an internal VEA policy Peck characterized publicly as an "integrity policy." (Pub. Summ. of Josh M. Reid Rep. at 2; Jeffrey Meehan, *Two months after arrest, no charges filed on VEA's Evans*, PAHRUMP VALLEY TIMES, May 1, 2019, at 3, ECF No. 51-3). The summary of the report generated by VEA's internal investigation is dated April 22, 2019. (Pub. Summ. of Josh M. Reid Rep. at 1). The summary found "Ms. Evans' [sic] did not commit any illegal acts with respect to the Property," and that "the allegations made by the Nye County Sheriff's Office relating to Ms. Evans' actions are unfounded." (*Id.* at 2). The summary also found that that Evans violated VEA's "integrity policy" because she "should have disclosed her interest in The Property to her supervisor, former VEA CEO Thomas Husted . . . pursuant to VEA Employment Policy #107." (Pub. Summ. of Josh M. Reid Rep. at 2). Evans claims that she did inform VEA leadership she was planning to purchase the Property. (Evans Dep. Tr. at 95:2-95:20, ECF No. 86-5). Evans and VEA agree that the embezzlement allegations against Evans are false. (Evans Dep. at 125:1-16, ECF No. 80-4; MSJ at 5:1-2).

While VEA publicized those findings, it waited one month to transmit the report to the District Attorney. Interim CEO Peck announced the investigation's findings to the press, communicating that Evans violated no laws. (Press Footage of Richard Peck, ECF No. 80-27). Referring to "The private investigation of the Angela Evans Affair—as I call it," Peck stated that "the investigation found no

illegal activities." (*Id.*). Peck also signaled that VEA's Board would decide at its upcoming meeting in May whether Evans would return to VEA and its decision was tethered to the disposition of the criminal case. Peck stated, "After the annual meeting the first week in May [the Board will determin[e] whether to bring back Angela at that time. They postponed it until after her arraignment." (*Id.*). Peck acknowledged that as of May 17, 2019 the report was not sent to the District Attorney. (Jeffrey Meehan, *Valley leader speaks on ongoing investigations*, PAHRUMP VALLEY TIMES May 17, 2019, at 3, ECF No. 51-1 ("'I don't know why they didn't send [the report] even though they said they were going to,' Peck said.")). VEA waited until May 21, 2019 to transmit the report to the District Attorney and requested it not be made public. (Arabia Email at 1, ECF 80-28). The District Attorney formally dismissed the charges against Evans on November 5, 2019. (Denial from Chris Arabia, District Attorney at 1, ECF No. 51-12).

**C. Evans was fired after refusing to resign and complaining of discrimination.**

In May and June 2019, VEA's Board urged Evans to resign. VEA Board member Dave Hall met with Evans and requested her resignation on May 29, 2019. (MSJ 8:15-16; Hall Aff. ¶17). Evans refused. (Evans Dep. at 155:18-156:5, ECF No. 80-4). On or about June 5, 2019, Interim CEO Peck met with Evans to persuade her to "take the separation package," (MSJ 8:22-24; Evans Dep. at 162:19-163:9, 164:20-23, ECF No. 80-4), and met with a search firm to discuss beginning a search for a new CEO to replace Evans (MSJ at 9:3; Search Firm Email at 1, ECF No. 80-35).

Evans was fired eleven days after she complained of discrimination. Her internal complaint with VEA, filed on June 17, 2019, alleged that she was being treated "unfairly, inappropriately, and discriminated against as a female, 56-year-old Hispanic CEO." (Evans Internal Compl. at 2, ECF 80-36). After learning of Evans' refusal to resign (based on her June 17, 2019, letter), the Board met on

June 27, 2019, voted to terminate Evans effective June 30, 2019, and informed Evans of its decision by letter dated June 28, 2019. (Termination Letter at 2, ECF No. 80-37). VEA noted that it would investigate Evans' internal discrimination claim. (*Id.*)

In Evans' termination letter, VEA explained its reasons for firing Evans. The letter stated that after Evans was arrested for embezzlement, "it has become apparent that VEA's members have lost confidence in you" and "numerous meetings between VEA and its members have involved members voicing strong distrust in you." (*Id.* at 1). VEA explained that "outside investigators" concluded that allegations that Evans violated VEA policies were "founded" and allegations that Evans "engaged in criminal conduct were unfounded." (*Id.* at 1 fn.1). VEA confirmed that a board member urged Evans to resign and gave her several weeks to mull it over, adding, "By resigning your employment, you would not have forced VEA to take action with respect to your employment." (*Id.* at 2). "Since you elected not to resign," the letter added, the VEA Board "met and voted to terminate your employment effective June 30, 2019." (*Id*).

Evans received less severance than her predecessor Husted. (Thurgood Dep. Tr. at 133:21-25, ECF No. 86-4).

After Evans was fired, VEA hired an attorney to investigate Evans' claim of discrimination. (MSJ 9:16-17; Ginapp Aff. ¶2, ECF No. 80-38). The investigator attempted to reach Evans for an interview through her counsel, but Evans declined (Evans Dep. at 171:9-14, ECF No. 80-4) and the investigator did not prepare a written report because she did not "have Ms. Evans' version of the facts." (Ginapp Aff. at 3:1-9). The investigator stated that she preliminarily concluded "there was insufficient evidence to substantiate Ms. Evans' allegations of sex, race, national origin, or age discrimination and retaliation." (Ginapp Aff. at 2:22-24).

Evans filed a Charge of Discrimination with the EEOC on December 4, 2019.

(EEOC Charge at 1, ECF No. 1-1). Evans checked boxes on the Charge form for retaliation and discrimination based on race, sex, national origin, and age, and claimed the discrimination began on February 26, 2019 and ended on June 30, 2019. (EEOC Charge at 1). Evans alleged that she was "subject to unequal terms and conditions of employment by Valley Electric Association" because she was "wrongly placed on administrative leave pending a third-party investigation of allegations against [her]," told she "would be brought back as CEO following the conclusion of VEA's annual membership meeting on April 27, 2019," told she "would be 'mentored' by an Interim Chief Executive upon [her] return," and terminated after she filed an internal complaint about discrimination and requested an investigation. (EEOC Charge at 1-2). The EEOC issued Evans a Notice of Right to Sue on or about December 5, 2019. (Compl. ¶17).

VEA has had four CEOs since Evans' arrest including acting, interim, and non-interim CEOs. (MSJ 9:21-22; Bart Thurgood Aff. ¶29, ECF No. 80-3). Three of these CEOs are white men: Steve Morrison, David Peck, and Mark Stallons—VEA's current, permanent CEO. (MSJ 10:4; Thurgood Aff. ¶29). One, Terri D'Antonio, is a white woman. (Thurgood Aff. ¶29).

Evans's Complaint alleges eight causes of action ("claims"): Claim 1 alleges sex discrimination, harassment, and retaliation in violation of Title VII, 42 U.S.C. § 2000e, et seq.; Claim 2 and 3 allege national origin and race discrimination, harassment, and retaliation in violation of Title VII, 42 U.S.C. § 2000e, et seq.; Claim 4 alleges race/ethnicity discrimination, harassment, and retaliation in violation of 42 U.S.C. § 1981; Claim 5 alleges age discrimination, harassment, and retaliation in violation of 29 U.S.C. § 623, et seq.; Claim 6 alleges retaliation in violation of Title VII, 42 U.S.C. § 2000e, et seq., 29 U.S.C. § 623, et seq., and 42 U.S.C. § 1981, et al; Claim 7 alleges luring under false pretenses in violation of Nevada Revised Statute § 613.010; and Claim 8 alleges negligent hiring, training, and supervision in violation of Nevada law. After Evans' initially filed her

Complaint in state court in Clark County, Nevada, VEA removed the case to this Court. VEA moves for summary judgment on all eight claims.

### III.     LEGAL STANDARD

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994) (citation omitted). Summary judgment is appropriate when the pleadings, the discovery and disclosure materials on file, and any affidavits "show there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable fact-finder could find for the nonmoving party and a dispute is "material" if it could affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). Where reasonable minds could differ on the material facts at issue, however, summary judgment is not appropriate. *See id.* at 250-51. "The amount of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983) (quoting *First Nat'l Bank v. Cities Service Co.*, 391 U.S. 253, 288-89 (1968)). The court must view the facts in the light most favorable to the non-moving party and give it the benefit of all reasonable inferences to be drawn from those facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The court must not weigh the evidence or determine the truth of the matter, but only determine whether there is a genuine issue for trial. *Balint v. Carson City*, 180 F.3d 1047, 1054 (9th Cir. 1999).

The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex*, 477

U.S. at 323. Once the moving party satisfies Rule 56's requirements, the burden shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. The nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Orr v. Bank of Am.*, 285 F.3d 764, 783 (9th Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). "[V]ery little evidence [is required] to survive summary judgment in a discrimination case because the ultimate question is one that can only be resolved through a 'searching inquiry'— one that is most appropriately conducted by the fact finder upon a full record." *Reynaga v. Roseberg Forest Prod.*, 847 F.3d 678, 691 (9th Cir. 2017) (quoting *Schnidrig v. Columbia Mach., Inc.*, 80 F.3d 1406, 1410 (9th Cir. 1996)).

## IV. DISCUSSION

VEA moved for summary judgment on all eight of Evans' claims, arguing that Evans failed to exhaust portions of Claims 1-3, and 5 (MSJ at 11-13, 16). The Court finds that Evans exhausted her pay and mentorship-related claims, but did not exhaust her harassment-related claims, so VEA is entitled to summary judgment on the harassment theory asserted in Claims 1, 2, 3, and 5 (based on sex, national origin, race, and age). VEA is additionally entitled to summary judgment on Evans' age-discrimination claim (Claim 5), luring claim (Claim 7), and negligent hiring claim (Claim 8). VEA is not entitled to summary judgment on Evans' discrimination and retaliation theories in Claims 1, 2, 3, 4, and 6 (based on sex, national origin, and race).

//

//

//

**A. Administrative Exhaustion**

**1. Legal Framework**

Title VII requires a plaintiff to exhaust their civil remedies before filing a civil action against an employer. To satisfy this requirement the plaintiff must, among other things: (1) file a complaint with the EEOC within 180 days after the alleged unlawful employment practice, 42 U.S.C. §2000e-5(e)(1) (noting the period is 300 days if the plaintiff "initially instituted proceedings" with a state agency); *see Laquaglia v. Rio Hotel & Casino, Inc.*, 186 F.3d 1172, 1174 (9th Cir. 1999), and (2) timely institute their action "within ninety days from the issuance of the right to sue letter by the EEOC," *Valenzuela v. Kraft, Inc.*, 801 F.2d 1170, 1172 (9th Cir. 1986). Generally, employers are liable only for actions occurring "within the 180- or 300—day time period after the discrete discriminatory act occurred" and "discrete discriminatory acts are not actionable if time barred. . . ." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002) (noting exception for harassment cases). But, employees may use time-barred discriminatory acts "as background evidence in support of a timely claim." *Id.* Title VII's exhaustion requirement is a "mandatory" claims processing rule, and a court "must enforce" such rules if a party "properly raise[s] it." *See Fort Bend Cnty., Texas v. Davis*, 139 S. Ct. 1843, 1849, 1851 (2019) (citations omitted).

Title VII's exhaustion requirement "afford[s] the agency an opportunity to investigate the charge" and "narrow[s] the issues for prompt adjudication and decision." *B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1099 (9th Cir. 2002) (citation omitted). EEOC complaints are construed "with utmost liberality," so even an "exceedingly sparse" EEOC charge can exhaust a claim. *Id.* at 1100. "It is sufficient that the EEOC be apprised, in general terms, of the alleged discriminating parties and the alleged discriminatory acts." *Chung v. Pomona Valley Cmty. Hosp.*, 667 F.2d 788, 790 (9th Cir. 1982) (citations omitted).

Federal courts may only consider claims "like or reasonably related to the

allegations contained in the EEOC charge." *B.K.B.*, 276 F.3d at 1100 (citations omitted).  This court may adjudicate claims either "within the scope of the EEOC's *actual* investigation or an EEOC investigation which can *reasonably be expected* to grow out of the charge of discrimination." *Lyons v. England,* 307 F.3d 1092, 1104 (9th Cir. 2002) (quoting *EEOC v. Farmer Bros. Co.*, 31 F.3d 891, 899 (9th Cir. 1994) (emphasis in original)). Because the EEOC charge is the seed from which the EEOC investigation grows, "[t]he crucial element of a charge of discrimination is the factual statement contained therein." *B.K.B.*, 276 F.3d at 1100 (quoting *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 462 (5th Cir. 1970).

### 2. Evans administratively exhausted claims relating to pay inequity, severance, and mentorship.

VEA argues that Evans failed to administratively exhaust her claim that she suffered pay disparities when she joined VEA. (MSJ at 11:24-13:6). In her EEOC Charge, Evans complains of "unequal terms and conditions of employment." (EEOC Charge at 1). The EEOC considers compensation to be among the "terms and conditions" of employment. *See, e.g.*, U.S. EQUAL EMP. OPPORTUNITY COMM'N, EEOC COMPLIANCE MANUAL § 15-VII EQUAL OPPORTUNITY FOR JOB SUCCESS*,* ("Employers cannot permit race bias to affect . . . pay . . . or any other term, condition, or privilege of employment."); EEOC COMPLIANCE MANUAL § 2-II.B.1 THRESHOLD ISSUES (listing "compensation" among issues relating to "terms, conditions, or privileges of employment"). An EEOC investigation into "terms and conditions" of employment would necessarily include an investigation into compensation because compensation is perhaps the most important "term" or "condition" of an employment relationship. Because unequal terms and conditions of employment encompasses pay disparity, Evans exhausted her pay inequity claims.

Evans exhausted her administrative remedies relating to severance and

mentorship. Specifically, Intake Notes from Evans' meeting with the EEOC investigator mention Evans' alleged refusal to accept the severance package offered by VEA (EEOC Intake Notes at 3, ECF No. 80-40). An investigation into Evans' claim of being "terminated unlawfully" (EEOC Charge at 2, ECF No. 1-1) necessarily would have involved an inquiry into the conditions of Evans' termination, including VEA's severance offer. (Thurgood Dep. at 133:21-25). Evans explicitly stated in her EEOC Charge that she was told she would be "'mentored' by an Interim Chief Executive upon [her] return," (EEOC Charge at 1), indicating that VEA allegedly conditioned Evans' return on agreeing to be mentored. An EEOC investigation into the details of Evans' allegations on severance or mentorship could "reasonably be expected to grow out of the charge of discrimination." *Lyons v. England*, 307 F.3d at 1104.

For these reasons, this Court finds that Evans did administratively exhaust her claims relating to pay inequity, severance, and mentorship.

**3. Evans failed to exhaust her harassment claims.**

Evans alleges workplace harassment based on sex, national origin, race, and age (Claims 1, 2, 3 and 5), but failed to administratively exhaust any claim of harassment or "hostile work environment" (MSJ 16:4-21). Although an EEOC Charge is construed with "utmost liberality" and can be "exceedingly sparse," a plaintiff must include some factual kernel of the claim in her EEOC Charge such than an investigation of harassment "reasonably be expected to grow out of" the charge or complaint. *B.K.B.*, 276 F.3d at 1100-1101. Neither Evans' EEOC Charge (ECF No. 1-1), nor her internal complaint to VEA, (ECF No. 80-36), nor her EEOC Intake Notes (ECF No. 80-40) contain any reference to "harassment." The absence of any reference to harassment precludes a finding that Evans administratively exhausted this claim with respect to any claim for relief, namely discrimination based on sex, race, national origin, ethnicity, or age.

Because VEA rightly argues that Evans failed to administratively exhaust her

harassment claims, VEA is entitled to summary judgment on the harassment theory in Claims 1, 2, 3, and 5. *See Fort Bend Cnty., Texas v. Davis*, 139 S. Ct. 1843, 1849, 1851 (mandating enforcement of Title VII's administrative exhaustion requirement).

**4. Evans exhausted her ADEA claims.**

Evans administratively exhausted her ADEA claims by checking the box for "age" under "discrimination based on" and explicitly claiming she "discriminated against and retaliated against because of my age. . . ." (EEOC Charge at 1-2). Doing so apprised the EEOC (and VEA) that age was one basis upon which Evans asserted discrimination. *See Chung*, 667 F.2d at 790.

**B. Evans Presents Genuine Issues of Material Fact Regarding Her Claims of Disparate Treatment Discrimination Under Title VII (Claims 1, 2, and 3)**

**1. Legal Standard**

"To show a prima facie case of disparate treatment, a plaintiff must offer evidence that 'give[s] rise to an inference of unlawful discrimination.'" *Reynaga v. Roseburg Forest Products*, 847 F.3d 678, 690 (9th Cir. 2017) (quoting *Sischo-Nownejad v. Merced Cmty. Coll. Dist.*, 934 F.2d 1104, 1110 (9th Cir. 1991) *superseded on other grounds as recognized by Dominguez-Curry v. Nev. Transp. Dep't*, 424 F.3d 1027, 1041 (9th Cir. 2005)).

A plaintiff may establish an inference of discrimination either by satisfying the prima facie elements from *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973) or, in the alternative, by producing "direct or circumstantial evidence demonstrating that a discriminatory reason 'more likely than not motivated' the employer." *Reynaga*, 847 F.3d at 691 (citing *Metoyer v. Chassman*, 504 F.3d 919, 931 (9th Cir. 2007)); *see also McGinest v. GTE Service Corp.*, 360 F.3d 1103 (9th Cir. 2004).

Evans relies on the three-step burden-shifting framework outlined in

*McDonnell Douglas.* This Court analyzes each step in turn.

**2. Evans makes a prima facie case of race, national origin, and sex discrimination under Title VII.**

Under *McDonnell Douglas,* "a plaintiff alleging disparate treatment under Title VII must first establish a prima facie case of discrimination. Specifically, the plaintiff must show that (1) [s]he belongs to a protected class; (2) [s]he was qualified for the position; (3) [s]he was subject to an adverse employment action; and (4) similarly situated individuals outside his protected class were treated more favorably." *Chuang v. Univ. of Cal. Davis Bd. of Trustees,* 225 F.3d 1115, 1123 (9th Cir. 2000) (citation omitted).

Here only the fourth prong is at issue. In its Motion for Summary Judgment, VEA does not contest that Evans, a Hispanic woman, is a member of a protected class, dispute her qualifications for CEO, or contest that she suffered an adverse employment action when she was fired from VEA. At issue under the fourth prong is whether Evans can show that other CEOs at VEA were "similarly situated" individuals outside Evans' protected classes who were "treated more favorably." *Chuang,* 225 F.3d at 1123. "Other employees are similarly situated to the plaintiff when they have similar jobs and display similar conduct." *Earl v. Nielsen Media Rsch., Inc.,* 658 F.3d 1108, 1114 (9th Cir. 2011) (internal quotation marks omitted).

A reasonable jury could find that Evans is similarly situated to others who have served as CEO at VEA, including former-CEO Husted, and subsequent interim and permanent CEOs Peck, D'Antonio, and Stallons. "[W]hether two employees are similarly situated is ordinarily a question of fact" *See Beck v. United Food & Commercial Workers Union Local 99,* 506 F.3d 874, 885 n.5 (9th Cir. 2007). "[E]mployees are similarly situated to the plaintiff when they 'have similar jobs and display similar conduct.'" *Earl,* 658 F.3d at 1114 (quoting *Vasquez v. County of Los Angeles,* 349 F.3d 634, 641 (9th Cir. 2003)). To be

similarly situated, "the employees need not be identical, but must be similar in material respects." *Id.* (quoting *Hawn v. Exec. Jet Mgmt., Inc.*, 615 F.3d 1151, 1157 (9th Cir. 2010)). "Materiality depends on the context and is a question of fact that 'cannot be mechanically resolved.'" *Id.* (quoting *Hawn*, 615 F.3d at 1157-58).

VEA submits no evidence that other CEOs at VEA, including Husted, Peck, D'Antonio, and Stallons,[1] possessed different job duties, were subject to different VEA policies and procedures, or were responsible to VEA's Board in different ways despite all holding the title of "Chief Executive Officer." VEA's suggestion that the other CEOs cannot be similarly situated because they never faced criminal prosecution (MSJ at 15 fn.18) is not dispositive because the precise contours of "similarly situated" is a factual issue. VEA argues that it gave Husted the "same choice," namely to "resign or be terminated," when he was accused of sexually harassing female employees at VEA (MSJ at 8:6-7). VEA's own rhetoric lumping together its treatment of Evans and Husted belies its argument that they are not similarly situated. A reasonable jury could find that Evans was "similarly situated" to Husted, Peck, D'Antonio, and/or Stallons.

As support for Evans' claims that she was treated less favorably than similarly situated CEOs at VEA, Evans cites differentials in severance pay, working conditions, and VEA's history of hiring white males for CEO. Evans presented evidence that she was given less severance than her predecessor CEO (Thurgood Dep. Tr. at 133:21-25, ECF No. 86-4). Such differences in severance payments offered to similarly situated employees may establish a prima facie case of discrimination under *McDonnell Douglas*. *See McGuinness v. Lincoln Hall*, 263 F.3d 49, 53, 54-55 (2d Cir. 2001) (plaintiff established she was similarly situated

---

[1] Evans was not similarly situated to CEO Morrison, who served for only one week and "had no responsibilities other than to maintain the status quo until Peck could arrive." (MSJ at 10 fn.14; Thurgood Aff. ¶28).

to a colleague who received more money in severance); *see also Gerner v. Cnty. Of Chesterfield, Va.*, 674 F.3d 264, 268-69 (4th Cir. 2012) (reversing dismissal of plaintiff's complaint alleging differential severance payments)). Evans also presented evidence that VEA initially told Evans that her return as CEO was conditioned on her having a white male mentor, a step that was without known precedent in VEA's history, (Evans Decl. ¶ 2, ECF No. 86-1), and that three of the four CEOs who succeeded Evans in some capacity, including her permanent replacement, were white males, (MSJ at pp. 9:21-22, 10:4, 15; Thurgood Aff. ¶29). While Evans need not show that she was replaced by an individual outside her protected class(es), *see Lyons*, 307 F.3d 1092 at 1117, such evidence "may help to raise an inference of discrimination," *see Carson v. Bethlehem Steel Corp.*, 82 F.3d 157, 159 (7th Cir. 1996).

Construing all evidence in Evans' favor, this Court finds that Evans has met her prima facie burden by presenting admissible, cumulative evidence that would allow a reasonable jury to conclude that similarly situated CEOs at VEA outside Evans' protected classes were treated more favorably than her.

**3. VEA articulated a legitimate, nondiscriminatory reason for its actions.**

Because Evans produced evidence sufficient to establish a prima facie case under *McDonnell Douglas*, "[t]he burden of production, but not persuasion, ... shifts to [VEA] to articulate some legitimate, nondiscriminatory reason for the challenged action." *Chuang*, 225 F.3d at 1123-24; *see also McDonnell Douglas*, 411 U.S. at 802. "[A] defendant meets its resulting burden of production by 'introduc[ing] evidence, which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the adverse action." *Bodett v. CoxCom, Inc.*, 366 F.3d 736, 742 (9th Cir. 2004) (quoting *St. Mary's Ctr. v. Hicks*, 509 U.S. 502, 509 (1993)). Here, VEA alleges that Evans was fired because "the fact that Plaintiff was arrested and, for months, faced the threat of criminal prosecution . . . led VEA to conclude that her return to VEA would be devastating to member

relations." (MSJ at 15:23-25). VEA's allegation is supported by substantial evidence, including the testimony of VEA employees. (Thurgood Aff. ¶23; Hall Aff. ¶¶11-13). VEA has therefore met its burden of production at step two.

**4. Evans has demonstrated sufficient evidence of pretext for her Title VII discrimination claims to proceed.**

Given that VEA does articulate a legitimate, nondiscriminatory reason for the challenged action, the burden shifts back to Evans to identify evidence that the proffered reasons were a pretext for discrimination. *See McDonnell Douglas*, 411 U.S. at 804. "[A]t the summary judgment stage, a plaintiff may raise a genuine issue of material fact as to pretext via (1) direct evidence of the employer's discriminatory motive or (2) indirect evidence that undermines the credibility of the employer's articulated reasons." *Noyes v. Kelly Servs.*, 488 F.3d 1163, 1170-71 (9th Cir. 2007) (quotation omitted). "All of the evidence [as to pretext]—whether direct or indirect—is to be considered cumulatively." *Id.* at 1170 (quoting *Raad v. Fairbanks N. Star Borough Sch. Dist.*, 323 F.3d 1185, 1194 (9th Cir. 2003) (alterations in original)). To defeat summary judgment Evans "must only demonstrate that there is a genuine dispute of material fact regarding pretext. The amount of evidence required to do so is minimal." *Nicholson v. Hyannis Air Serv., Inc.,* 580 F.3d 1116, 1127 (9th Cir. 2009) (citing *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1124 (9th Cir. 2004). "[V]ery little evidence is necessary to raise a genuine issue of fact regarding an employer's motive," so "[w]hen the evidence, direct or circumstantial, consists of more than the *McDonnell Douglas* presumption, a factual question will almost always exist with respect to any claim of a nondiscriminatory reason." *McGinest*, 360 F.3d at 1124. To show pretext, Evans points to evidence that VEA's stated reason for terminating her is not credible and VEA failed to fully support Evans after her arrest. Evans also disputes the claim that VEA members would have opposed her return as CEO.

Although VEA claims it fired Evans based "only" on her arrest and its

members' response, the record is replete with evidence tending to show that VEA's explanation is unworthy of credence. "Proof that the defendant's explanation is unworthy of credence is [a] form of circumstantial evidence that is probative of intentional discrimination, and it may be quite persuasive." *McGinest*, 360 F.3d at 1123 (quoting *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 147 (2000)). VEA asserts that it "only terminated Plaintiff's employment because of her arrest (and the unrelenting anger that this arrest caused VEA's members-owners)." (MSJ at 22:4-5). But at least three witnesses, including former VEA employees, testified that the rate hike Evans implemented before her arrest, not the arrest itself, was the root cause of member outrage against her and VEA and led to her being fired. Former employee Ken Johnson testified, "[I]t was the rate increase, not her arrest that was really behind the angst. . . " and led to Evans being fired. (Johnson Dep. at 97:6-8). Evans' former real estate agent and VEA member Renee West testified that the rate hike "made a lot of people very mad" because members earlier had been promised there would be no rate hike for years to come. (West Dep. at 99:3-8). Interim CEO Peck stated that the rate increase—prior to Evans' arrest—was seen by VEA members as a "breach of the promise that VEA had made to them" and indicated that "members' frustration was focused on Ms. Evans." (Peck Aff. ¶3, ECF No. 80-24). VEA specifically represents that it terminated Evans only because of her arrest and the anger it caused. A reasonable jury could find that the rate hike, not Evans arrest, led to Evans' firing. The evidence regarding members' ire about the rate hike raises a genuine issue of material fact regarding the credibility of the VEA's proffered reasons for terminating Evans.

Evans also disputes VEA's claim that it "supported her even after she was arrested on suspicion of embezzlement. . . ." (MSJ at 15:9-10). VEA delayed sending to the Nye County District Attorney its investigation concluding that Evans did not commit embezzlement. The summary of the investigation was

dated April 22, 2019, and Evans asked VEA on May 1, 2019, to send "the report to Nye County DA's office so the charges could be dropped." (EEOC Intake Notes, at 2). VEA Board Member David Hall allegedly told Evans on or about May 3, 2019 that the Board "was waiting wanted until . . . Nye County played their hand." (Evans Dep. at 154:1-4, 154:12, ECF No. 80-4). Interim CEO Peck also signaled that the Board's decision about Evans' return depended on the District Attorney's decision in the criminal case, (Press Footage of Richard Peck, ECF No. 80-27), and confirmed that a public summary of the report was not sent to the District Attorney until at least May 17, 2019. (Jeffrey Meehan, *Valley leader speaks on ongoing investigations*, PAHRUMP VALLEY TIMES May 17, 2019, at 3, ECF No. 51-1). Counsel for VEA sent a public summary of the report to District Attorney Arabia on May 21, 2019. (Arabia Email at 1). A reasonable factfinder could conclude that VEA's delay in sending a summary of the report exonerating Evans of embezzlement to the district attorney while "waiting for them to play their hand" creates a genuine dispute of material fact as to whether VEA supported Evans after she was accused of embezzlement.

Finally, there is also a dispute as to whether Evans could have resumed her role as CEO at VEA. VEA argues that it knew by May 2019 that "the damage to its relationship with its members would be irreparable if VEA did not part ways with Plaintiff" (MSJ at 7:16-18; Hall Aff. ¶14) because VEA "could not repair its relationship with its member-owners unless Plaintiff's employment ended." (MSJ at 15:7-8). Bart Thurgood, VEA's Executive Vice President of Human Resources, was more equivocal. Though he acknowledged the acrimony at VEA Board meetings, when asked in his Rule 30(b)(6) deposition about how VEA members would have responded to Evans' return, he answered that he did not know. (Response at 6:13-15; Thurgood Dep. at 132:6-9 ("Q. Do you know what effect the confidence in the membership would have been if Ms. Evans would have been brought back[?] A. No, I don't know. I don't know.")).

In sum, Evans has presented the minimal evidence required to raise a genuine issue of material fact as to whether VEA's alleged reason for firing her was pretextual. Therefore, this Court denies VEA's Motion for Summary Judgment as to Evans' Title VII Discrimination Claims (Claims 1-3).

### C. Evans Presents Genuine Issues of Material Fact Regarding Her Retaliation Claims Under Title VII (Claims 1-3, 6)

#### 1. Legal Standard

Evans claims that her termination was retaliatory. Title VII's anti-retaliation provision, set forth in 42 U.S.C. § 2000e–3(a), prohibits an employer from discriminating against any employee *because* the employee has made a charge against it. *Id.* To state a claim for retaliation, a plaintiff must allege she (1) engaged in a protected activity, (2) her employer subjected her to a materially adverse employment action, and (3) a causal link exists between the protected activity and the adverse action. *Westendorf v. W. Coast Contractors of Nev., Inc.*, 712 F.3d 417, 422 (9th Cir. 2013) (citations omitted). If Evans states a prima facie case of retaliation, the burden shifts to VEA to "advance a legitimate, nonretaliatory reason for any adverse employment action taken against [Evans]." *See Reynaga*, 847 F.3d at 693 (citing *Steiner v. Showboat Operating Co.*, 25 F.3d 1459, 1464-65 (9th Cir. 1994). If VEA proffers such a nondiscriminatory reason, Evans "has the ultimate burden of showing that [VEA's] proffered reasons are pretextual." *Id.* (quoting *Steiner*, 25 F.3d at 1465).

#### 2. Evans makes a prima facie case of retaliation under Title VII.

Here the issue is whether Evans has presented sufficient evidence to satisfy the causation requirement. VEA does not contest that Evans engaged in protected activity by filing her internal complaint on June 17, 2019. (MSJ at 20:4-6); *see Passatino v. Johnson & Johnson Consumer Prods., Inc.*, 212 F.3d 493, 506 (9th Cir. 2000) (noting that filing an internal complaint is a protected activity under Title VII). Nor does VEA dispute that Evans suffered an adverse employment

action when VEA fired her on June 28, 2019. *See* (MSJ at 20:4-6); *Reynaga*, 847 F.3d at 693 (observing that Title VII covers "non-trivial employment actions" that would deter reasonable employees from complaining).

In disputing causation, VEA argues that Evans must show that retaliation was the sole reason she was fired based on the "high 'but for' standard of causation that is required to support her retaliation claims." (MSJ at 20:4-7) (citing *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 346-47 (2013)). VEA argues that Evans cannot satisfy that standard because "VEA made the decision to terminate Plaintiff's employment *before* she ever asserted a single complaint of discrimination." (MSJ at 20:4-7) (emphasis added). VEA's argument turns on the meaning of the statutory phrase "because," specifically, whether Evans was fired "because" she filed a discrimination complaint with VEA days before she was fired. While VEA, citing *Nasser,* argues that retaliation must be the sole "but-for" cause of termination, the Supreme Court in *Bostock* clarified that Title VII requires a plaintiff to show that retaliation was a but-for cause, not the *sole* but-for cause. 140 S. Ct. 1731, 1739 (2020).

Though *Bostock* involved sex discrimination, its reasoning applies with equal force to Evans' retaliation claim involving the same statutory term. *Id.* (construing Title VII provision prohibiting discrimination based on sex). Title VII's provisions prohibiting status-based discrimination and retaliation both use the term "because" as the operative causation element. *Compare* 42 U.S.C. § 2000e–2(a)(1) (prohibiting discrimination "because of" an individual's race, color, religion, sex, or national origin) *with* 42 U.S.C. § 2000e–3(a) (prohibiting retaliation "because*"* an employee engaged in protected activity, including filing an internal complaint). In *Bostock*, the Court held that "Title VII's 'because of' test incorporates the 'simple' and 'traditional' standard of but-for causation." *Bostock,* 140 S. Ct. at 1739. "When it comes to Title VII, the adoption of the traditional but-for causation standard means a defendant cannot avoid liability just by citing some *other* factor

that contributed to its challenged employment decision. So long as the plaintiff's sex was one but-for cause of that decision, that is enough to trigger the law." *Id.* (emphasis in original). *See also Thomas v. CalPortland Co.*, 993 F.3d 1204, 1209 (9th Cir. 2021) (construing *Bostock* but-for causation to apply "at least in the Title VII context"). Under *Bostock*, Evans must only adduce evidence showing that the discrimination complaint she filed at VEA (her protected activity) was a but-for cause of her termination, not the sole cause. Even under the more stringent causation standard, Evans has shown that there is factual dispute as to causation.

The timing of Evans' termination, just eleven days after she filed a discrimination complaint, raises an inference of retaliation. To establish a causal connection between her protected activity and the adverse actions, a plaintiff may allege direct or circumstantial evidence from which causation can be inferred, including the temporal proximity of the protected activity and the occurrence of the adverse action. *Pardi v. Kaiser Found. Hosps.*, 389 F.3d 840, 850 (9th Cir. 2004) (citing *Bell v. Clackamas Cnty.*, 341 F.3d 858, 865-66 (9th Cir. 2003)). "Temporal proximity between protected activity and an adverse employment action can by itself constitute sufficient circumstantial evidence of retaliation in some cases." *Bell*, 341 F.3d at 865; *see also Flores v. City of Westminster*, 873 F.3d 739, 750 (9th Cir. 2017) (inferring retaliation from span of three to eight months) (citing *Coszalter v. City of Salem*, 320 F.3d 968, 977-78 (9th Cir. 2003)). Although VEA argues that it decided to terminate Evans *before* she complained of discrimination on June 17, 2019 (Evans Internal Compl. at 1), a reasonable jury could find otherwise. VEA indicated in Evans' termination letter, dated June 28, 2019, that it fired her because she refused to resign and wished to return as CEO, facts that it learned from her internal complaint: "[O]n June 17, 2019, you confirmed that you would not resign and that you intended to resume your position as CEO. Since you elected not to resign, yesterday, June 27, 2019, the

Board of Directors of Valley Electric met and voted to terminate your employment . . . ." (Termination Letter at 2). As used here, the word "since" means "in view of the fact that" or "because." *See Since*, MERRIAM-WEBSTER.COM DICTIONARY, https://www.merriam-webster.com/dictionary/since (last visited December 20, 2022). In other words, VEA terminated Evans "since" or "because of" her internal complaint.

This Court holds that Evans has presented sufficient evidence to satisfy the causation element, namely, that she was fired because of her internal complaint in which she complained of discrimination and communicated her refusal to resign. The timing of Evans' termination raises an inference of retaliation; the termination letter makes clear that the Board was aware of her complaint when they voted to fire Evans and fired her because the complaint revealed Evans' intention not to resign. The close proximity and explicit connection to her complaint satisfy *Bostock*'s "traditional" but-for causation standard and would also satisfy the more stringent, sole but-for causation standard urged by VEA because a reasonable jury could conclude that her complaint was the cause of her termination. Evans therefore satisfies the third prong of Title VII's prima facie case for retaliation.

**3. VEA articulated a legitimate, nondiscriminatory reason for its actions.**

As Evans has demonstrated a prima facie case of retaliation under Title VII, the burden then shifts to VEA to "advance a legitimate, nonretaliatory reason for any adverse employment action taken against [Evans]." *Reynaga*, 847 F.3d at 693. As discussed, VEA has met this burden by claiming it fired Evans based on her arrest and the related fallout.

**4. Evans has raised a genuine issue of material fact regarding retaliatory pretext.**

Because VEA provides a non-discriminatory explanation for Evans' termination, "the plaintiff must show that the defendant's explanation is merely

a pretext for impermissible discrimination." *Dawson, v. Entek Int'l.*, 630 F.3d 928, 936 (9th Cir. 2011) (citing *Ray v. Henderson*, 217 F.3d 1234, 1240 (9th Cir. 2000)). "[E]vidence of pretext can take many forms." *McDonnell Douglas*, 411 U.S. at 804-05. "For example, the manner in which the plaintiff was treated by his employer during his employment may be relevant to a showing of pretext." *Reynaga*, 847 F.3d at 694 (citing *McDonnell Douglas*, 411 U.S. at 804-05).

Here Evans has raised a triable issue as to VEA's retaliatory intent. "Proof of a causal link between [Plaintiff's] complaint and his termination—as evidenced by temporal proximity—is certainly relevant to an evaluation of pretext." *Reynaga*, 847 F.3d at 695 (citing *Dawson*, 630 F.3d at 937 "In some cases, temporal proximity can by itself constitute sufficient circumstantial evidence of retaliation for purposes of both the prima facie case and the showing of pretext."). Evans' prima facie case is strong because she was fired just eleven days after she filed her complaint, which VEA and its Board knew about and specifically referenced when they fired her.

Because a reasonable jury could find that VEA's proffered reasons for terminating Evans' employment were pretextual, VEA's motion for summary judgment as to Evans' Title VII Retaliation Claim (Claims 1-3, 6) is denied.

**D. Evans Has Raised a Material Question of Fact Regarding Race/Ethnicity Discrimination and Retaliation under 42 U.S.C. 1981 (Claims 4 and 6)**

**1. Legal Standard**

Section 1981 of Title 42 prohibits race discrimination in the making and enforcing of contracts, including employment contracts. 42 U.S.C. § 1981(a). Because "legal principles guiding a court in a Title VII dispute apply with equal force in a § 1981 action," *Manatt v. Bank of Am., NA*, 339 F.3d 792, 797 (9th Cir. 2003), this Court incorporates by reference the legal standards relating to Title VII discrimination and retaliation, including the *McDonnell Douglas* burden-

shifting framework.

The *McDonnell Douglas* framework presumes a but-for causation standard. *Comcast Corp. v. Nat'l Ass'n. of African Am.-Owned Media*, 140 S. Ct. 1009, 1019 (2020) ("*McDonnell Douglas* arose in a context where but-for causation was the undisputed test. . . ."). VEA argues that *Comcast* introduces a sole but-for causation requirement to § 1981 and, under that test, Evans' § 1981 claim would be defeated by her statement that "[h]ad [she] not been arrested and falsely accused by Nye County, [she] would still have a job." (MSJ at 22:7-8; Evans Dep. Tr. At 41:25-42:5, ECF No. 80-7).

In applying *Comcast,* however, the Ninth Circuit has explicitly rejected the sole but-for causation test and instead recognized that a plaintiff must merely present evidence showing discrimination *because of* race—where race is a but-for cause. *See Yoshikawa v. Seguirant*, 41 F.4th 1109, 1117 (9th Cir. 2022). In *Yoshikawa*, the defendants argued that an independent non-discriminatory reason for their action defeated the plaintiff's 1981 claim. *Id.* Rejecting the argument, the Ninth Circuit explained that the sole but-for causation standard would defeat any race discrimination claim "as long as the defendant provided some justification for the discriminatory act," which was inconsistent with the anti-discrimination purpose of the statute. *Id. see also Comcast*, 140 S. Ct. at 1020 (Ginsburg, J., concurring) (explaining that a restrictive reading is incongruous with § 1981's "intent[] to … secure … practical freedom." (quoting *Jones v. Alfred H. Mayer Co.*, 392 U.S. 409, 431 (1968))). This approach is also consistent with the Title VII causation requirement under *Bostock. See Bostock*, 140 S. Ct. at 1739 (observing that Title VII requires "one but-for cause" for the challenged decision and an employer cannot avoid liability "by citing some *other* factor" that contributed to the challenged decision). *See Manatt* 339 F.3d at 797. ("[L]egal principles guiding a court in a Title VII dispute apply with equal force in a § 1981 action.").

//

**2. Evans raises a genuine issue of material fact as to her § 1981 discrimination and retaliation claims.**

This Court incorporates its discussion of Evans' Title VII discrimination and retaliation claims, above. As with her Title VII claims, Evans successfully raised genuine disputes of material fact under § 1981 as to whether persons outside her protected classes were treated more favorably by VEA and whether VEA's proffered reason for her termination—her arrest—was pretextual in both the discrimination and retaliation contexts. However, Evans' harassment claim under § 1981 fails as a matter of law.

Title VII hostile work environment standards are equally applicable to actions arising under 42 U.S.C. § 1981. *Manatt*, 339 F.3d at 797. In order for a Plaintiff to succeed on their claim of a hostile work environment based on race or sex, the plaintiff must demonstrate: "(1) that [s]he was subjected to verbal or physical conduct of a racial [or sexual] nature; (2) that the conduct was unwelcome; and (3) that the conduct was sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and create an abusive work environment." *Reynaga* 847 F.3d at 686 (9th Cir. 2017) (quoting *Vasquez v. City of Los Angeles*, 349 F.3d 634, 642 (9th Cir. 2003). "'[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious)' are not sufficient to create an actionable claim under Title VII, but the harassment need not be so severe as to cause diagnosed psychological injury." *Reynaga*, 847 F.3d at 687 (quoting *Faragher*, 524 U.S. at 788).

Evans obliquely raises two instances of harassment based on race. First, Evans alleges that she would have been assigned a white mentor had she been permitted to return to VEA. (Compl. ¶ 44). Second, Evans alleges that a white VEA Board member told her to "resign to save her career." (Compl. ¶ 45). Neither instance rises beyond the sort of "isolated incident" that is not actionable under Title VII or § 1981 and neither is severe nor pervasive enough to alter the

conditions of Evans' employment.

For these reasons, this Court denies VEA's Motion for Summary Judgment as to Evans' discrimination and retaliation claims under § 1981, and grants VEA's Motion for Summary Judgment as to Evans' harassment claims under § 1981.

### E. Evans' Age Discrimination Claims Fail as a Matter of Law

### 1. Legal Standard

The Age Discrimination in Employment Act (ADEA) makes it unlawful for an employer to discriminate "because of [an] individual's age." 29 U.S.C. § 623(a)(1). For the prohibition to apply, Plaintiff must be "at least 40 years of age." 29 U.S.C. § 631(a). At the summary judgment stage, the *McDonnell Douglas* burden shifting framework applies to ADEA cases. *See Shelley v. Green*, 666 F.3d 599, 607 (9th Cir. 2012) (holding that *Gross v. FBL Financial Svcs., Inc.*, 557 U.S. 167 (2009) did not overrule cases utilizing the *McDonnell Douglas* framework to decide summary judgment motions in ADEA cases). Under the ADEA, a plaintiff may demonstrate prima facie case of age-related disparate treatment "by demonstrating that [s]he was (1) at least forty years old, (2) performing [her] job satisfactorily, (3) discharged, and (4) either replaced by substantially younger employees with equal or inferior qualifications or discharged under circumstances otherwise 'giving rise to an inference of discrimination.'" *Schechner v. KPIX-TV*, 686 F.3d 1018, 1023 (9th Cir. 2012) (quoting *Diaz v. Eagle Produce Ltd. P'ship.*, 521 F.3d 1201, 1207 (9th Cir. 2008)).

### 2. Evans fails to make a prima facie case of age discrimination.

Here, VEA does not contest the first three elements of Evans' prima facie age discrimination case (MSJ at 18:7-19:5), namely, that when Evans was fired she was fifty-six years old (Evans Internal Compl. at 2) and performing her job satisfactorily. The only element at issue is whether Evans was either replaced by a substantially younger employee or there is circumstantial evidence giving rise

to an inference of age-related discrimination. "Generally, an employee can satisfy the last element of the prima facie case only by providing evidence that he or she was replaced by a substantially younger employee with equal or inferior qualifications." *Diaz*, 521 F.3d at 1207 fn.2. (noting that other "circumstantial evidence" can be considered if former position goes unfilled). Evans was not replaced by a substantially younger employee. Of the four CEOs to serve at VEA since Evans' arrest, including acting, interim, and non-interim CEOs (MSJ at 9:21-22; Thurgood Aff. ¶29), only one, Steve Morrison, was younger than Evans and he served as CEO for less than one week. (Thurgood Aff. ¶28). Evans' permanent replacement, Mark Stallons, is about five years older than Evans. (Thurgood Aff. ¶29). Because three of the four temporary or permanent replacements were older than her, Evans fails to present a prima facie case of age-related discrimination because she was not replaced with a substantially younger employee.

Therefore, this Court grants VEA's Summary Judgment Motion as to Evans' ADEA claim (Claim 5).

**F. Evans' Luring Claims Fail as a Matter of Law**

Evans' Complaint alleges that at the time she was hired, "VEA made false or deceptive representations or false pretenses to Evans" (Compl. ¶109) concerning the amount and character of the work, compensation, and other conditions of employment in violation of Nevada's "luring" statute, NRS 613.010, which provides a private right of action for a worker who was induced by false or deceptive representations, false advertising, or false pretense to change her place of employment or abode. NRS 613.010(3). The gravamen of Evans' claim is that VEA falsely represented that it was an equal employment opportunity employer and does not engage in unlawful discrimination or retaliation. (ECF No. 1. at 16). VEA argues that Evans initiated contact with VEA, has not produced the employment advertising at issue, and the types of representations at issue are

1    not actionable misrepresentations.

2        The Court need not reach every argument made by VEA because Evans does

3    not identify any evidence tending to show that at the time the alleged claim was

4    made it was untrue. Evans admits that VEA paid her the salary she was promised

5    in her initial job offer (Evans Dep. at 38:24, ECF No. 80-4) and the job description

6    she received upon her hire at VEA was mostly accurate.[2] (Evans Dep. at 66:20-

7    24, ECF No. 80-4). Evans concedes that her claim is now narrower than alleged:

8    It is based on representations that VEA is an equal opportunity employer that

9    does not discriminate or retaliate, which she claims is wholly untrue and was

10    discovered "based upon her own unlawful treatment. . . ." (ECF No. 86 at 19:1-

11    2). Where no factual showing is made in opposition to a motion for summary

12    judgment, the District Court is not required to search the record *sua sponte* for

13    some genuine issue of material fact. *See Carmen v. San Francisco Unified School*

14    *Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001). Evans points to no objective evidence

15    in the record that demonstrates that, at the time of the alleged advertisement,

16    VEA was not an equal opportunity employer that did not retaliate. Evans' general

17    reference to her own treatment is not a specific factual showing that

18    demonstrates the existence of a genuine issue of material fact.

19        Therefore, this Court grants VEA's Motion for Summary Judgment as to

20    Evans' Luring Claims (Claim 7).

21    **G. Evans' Negligent Hiring and Retention Claims Fail as a Matter of Law**

22        Evans claims that VEA's negligent hiring and retention of employees caused

23    her termination. Evans' negligent hiring and retention claims fail both because

24    they are preempted by the Nevada Supreme Court's interpretation of NRS

25    613.330 and because Evans does not provide a factual basis for her assertion

26

27    [2] Evans notes that the Executive Vice President job description specified Evans

28    would report to the Chief Operating Officer (COO), a position that Evans believes
was not in place when VEA hired her. (Evans Dep. at 66:20-24, ECF No. 80-4).

1  that VEA failed to train its Board Members.

2    Nevada recognizes the tort of negligent hiring, training, supervision, and

3  retention. *Hall v. SSF, Inc.*, 930 P.2d 94, 99 (1996). An employer has a duty to

4  use reasonable care in the hiring, training, supervision, and retention of

5  employees to make sure that its employees are fit for the positions. *Id.*; *Blanck v.*

6  *Hager*, 360 F.Supp.2d 1137, 1157 (D. Nev. 2005).

7    "The Nevada Supreme Court has consistently found that NRS 613.330

8  preempts common law claims premised on employment discrimination." *Levy v.*

9  *Mandalay Corp.*, No. 2:14-CV-01636-GMN, 2015 WL 3629633 (D. Nev. June 10,

10  2015) (citing *Sands Regent v. Valgardson*, 777 P.2d 898, 900 (Nev. 1989) ("the

11  Legislature has addressed the gravity of violating Nevada's public policy against

12  age discrimination by defining the extent of the remedy available to parties

13  injured by such discrimination."); *D'Angelo v. Gardner*, 819 P.2d 206, 217 n.10

14  (1991) ("no additional court-created remedies ... arise out of age-based wrongful

15  discharge for which tort recovery is available by statute.")). This case is unlike

16  those where federal courts have found NRS 613.330 did not preempt common

17  law employment-related claims based on facts involving torts like sexual assault,

18  battery, or false imprisonment. *See, e.g.*, *Painter v. Atwood*, 912 F.Supp.2d 962,

19  964 (D. Nev. 2012); *Meza-Perez v. Sbarro LLC*, No. 2:19-CV-00373-APG-NJK,

20  2020 WL 12752817 (D. Nev. Dec. 16, 2020). Because the facts underlying Evans'

21  negligent hiring claim are the same as those underlying her employment

22  discrimination claims, this Court finds that Evans' claims negligent hiring

23  allegations are "clearly intended to be remedied by the statutory framework" and

24  do not give rise to separate common law tort claims. *Jackson v. Universal. Health*

25  *Servs. Inc.*, No. 2:13-CV-01666-GMN, 2014 WL 4635873 at *4 (D. Nev. Sept. 15,

26  2014) (quoting *Painter*, 912 F.Supp.2d at 964-65).

27    Summary judgment on Evans' negligent hiring claim is further required

28  because Evans has provided no factual basis for her assertion that VEA failed to

train its Board members on relevant statutory issues related to employment law, or hired persons where antecedent circumstances would "give [VEA] reason to believe that the person, by reason of some attribute of character or prior conduct, would create an undue risk of harm to others in carrying out his or her employment responsibilities." *Hall,* 930 P.2d at 99 (quotation omitted). "Nevada law does not permit the inference that an employer was negligent in training or supervising simply because the Defendant's employees acted in a discriminatory manner; 'the fact that an employee acts wrongfully does not in and of itself give rise to a claim for negligent hiring, training, or supervision.'" *Romero v. Nevada Dept. of Corrections*, No. 2:08-CV-808-JAD-VCF, 2013 WL 6206705 at *17 (D. Nev. Nov. 27, 2013) (quoting *Colquhoun v. BHC Montevista Hosp., Inc.*, 2:10-CV-00144-RLH-PAL, 2010 WL 2346607, at *3 (D. Nev. June 9, 2010)).

Therefore, this Court grants VEA's Motion for Summary Judgment as to Evans' Negligent Hiring and Supervision Claim (Claim 8).

## V. CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the motions before the Court.

IT IS THEREFORE ORDERED THAT VEA's Motion for Summary Judgment (ECF No. 80) is GRANTED-IN-PART and DENIED-IN-PART as follows:

- VEA's Motion for Summary Judgment is DENIED as to Evans' Title VII and § 1981 claims (Claims 1-4) relating to discrimination and retaliation;

- VEA's Motion for Summary Judgment is GRANTED as to Evans' Title VII and § 1981 claims (Claims 1-4) relating to workplace harassment;

- VEA's Motion for Summary Judgment is GRANTED as to Evans' age-related discrimination claims (Claim 5).

1    • VEA's Motion for Summary Judgment is DENIED as to Evans'
2       retaliation claims based on sex and race (Claim 6).
3    • VEA's Motion for Summary Judgment is GRANTED as to Evans' luring
4       (Claim 7) and negligent hiring (Claim 8) claims.

6    IT IS FURTHER ORDERED THAT Evans' Motion for an Order Directing
7  Additional Discovery (ECF No. 87) is DENIED without prejudice as moot.

9    DATED THIS 13th Day of January, 2023.

_____
ANNE R. TRAUM
UNITED STATES DISTRICT JUDGE